# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR LEE WILLIAMS,<br>　　　　　Petitioner, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO.  H-13-1714 |
| | § | |
| WILLIAM STEPHENS,<br>Director, Texas Department of<br>Criminal Justice, Correctional<br>Institutions Division,<br>　　　　　Respondent. | §<br>§<br>§<br>§<br>§<br>§ | |

## MEMORANDUM AND ORDER

Over thirty years ago, a jury convicted Arthur Lee Williams of the capital murder of a police officer in plain clothes who was trying to serve a warrant on Williams.  The sole issue in dispute at the guilt phase of the trial was whether Williams knew he was fighting with a law enforcement officer.  The State used its peremptory strikes to eliminate from the jury all six potential African-Americans in the venire.  The defense called no witnesses at the punishment phase.  No mitigation evidence was presented.  Before the Court is Williams' first federal habeas petition.

The three decades since Williams' conviction in 1983 have brought tremendous changes to capital-punishment jurisprudence.  At the time of Williams' trial, the law did not yet hold prosecutors accountable for their use of peremptory strikes.  *Batson v. Kentucky*, 476 U.S. 79 (1986); *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (*"Miller-*

El I"); *Miller-El v. Dretke*, 545 U.S. 231 (2005) ("*Miller-El II*").  The now-familiar standard in *Strickland v. Washington*, 466 U.S. 668 (1984), had not been articulated by the Supreme Court.  Decades passed between the conviction and the Supreme Court's rulings making clear a capital defense attorney's constitutional obligation to investigate and present mitigating evidence.  *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000).  In cases where attorneys presented some mitigating evidence to the jury, jurisprudence emerged after Williams' trial repeatedly criticizing the State of Texas for not providing jurors in the punishment phase interrogatories a meaningful vehicle to consider that evidence.  *Penry v. Lynaugh*, 492 U.S. 302 (1989) ("*Penry I*"); *Penry v. Johnson*, 532 U.S. 782 (2001) (*"Penry II"*).  Federal law now provides significant protections to a criminal defendant that were unclear and unanticipated at time of Williams' trial.[1]

Federal habeas review has likewise evolved in the past three decades.  Through the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Congress has narrowed the federal courts' review of state court decision making.  The Supreme

---

[1]      As one judge on the Texas Court of Criminal Appeals observed, Williams' case "was tried almost thirty years ago.  The law concerning the punishment issues in a death penalty case was much different then.  The law concerning mitigation evidence was much different then.  And the law concerning defense counsel's constitutional duty to investigate mitigating evidence was much different then."  *Ex parte Williams*, 2012 WL 2130951, at *19 (Tex. Crim. App. 2012) (Cochran, J., concurring) (footnotes omitted).

Court has limited the scope of federal habeas review to the factual record created, and the legal arguments raised, in state court. *Compare Vasquez v. Hillery*, 474 U.S. 254, 260 (1986), *with Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). The Supreme Court over the years, however, has mitigated the harshness of these limitations on federal habeas review by allowing federal courts to consider procedurally defective claims under a cause and actual prejudice standard. *Coleman v. Thompson*, 501 U.S. 722 (1991). Most recently, the Supreme Court authorized federal review of claims defaulted by ineffective habeas representation. *Martinez v. Ryan*, ___ U.S. ___ 132 S. Ct. 1309 (2012); *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013). Thus, habeas law differs significantly from that in place when a state court sentenced Williams to death in 1983 and when his state habeas applications were filed.

Williams has tried to litigate legal challenges to his trial since the time of his conviction and sentence. Inexplicably, the state review took three decades to run its course. For reasons unclear from the record, state habeas review itself plodded on for twenty years, only concluding in 2012. For the first time, Williams has filed a federal petition for a writ of habeas corpus. Williams raises several grounds for relief, with numerous sub-arguments. The parties have submitted lengthy briefing. The parties' papers to date nevertheless fail to adequately address many important legal

3

developments and factual considerations.  For the reasons discussed below, the Court will deny the pending motion for summary judgment without prejudice and will enter a new briefing schedule.

## I.  <u>BACKGROUND</u>

The matters now before the Court do not require an extensive discussion of the factual basis for Williams' conviction.  In 1982, the State of Texas charged Williams with capital murder for "intentionally and knowingly caus[ing] the death of Daryl Wayne Shirley . . ., a peace officer in the lawful discharge of an official duty, by shooting [him] with a gun, knowing at the time that [he] was a peace officer."  Clerk's Record at 6.  Williams stood trial in the 208th District Court of Harris County, Texas, in 1983.

The trial testimony showed that, when plain-clothed Officer Shirley tried to detain Williams on outstanding warrants from Minnesota, a struggle ensued.  Officer Shirley was shot.  There was no dispute at trial that Williams shot Officer Shirley.  In the guilt phase, the jury had only one narrow question to decide.  As the Texas Court of Criminal Appeals majority opinion observed on state habeas review, "[Williams] had not planned to kill someone that day.  He had not even planned a robbery during which he might have anticipated the death of an individual.  [Williams] killed his victim during a struggle, and while there was certainly enough time for him to have

4

formed a 'deliberate' mental state, [Williams] at least had room to argue that his conduct was not deliberate." *Ex Parte Williams*, 2012 WL 2130951 at *12 (Tex. Crim. App. 2012).  The question for the jurors was whether Williams knew the victim was a police officer.

It is undisputed that Officer Shirley was not in uniform when he confronted Williams, raising the questions of whether he had identified himself as law enforcement and whether Williams believed that Shirley was in fact in law enforcement.  The jury had before it only limited and conflicting circumstantial information on these critical issues.  Witnesses called by the State and the defense gave contradictory testimony about whether Williams knew, or suspected, that Officer Shirley was a police officer.  The thrust of Williams' trial defense was that, because Williams "had been robbed in the past by someone who falsely identified himself as a police officer . . ., if Detective Shirley identified himself as a police officer, [Williams] did not believe him."  *Id.*  Throughout his legal proceedings, Williams has argued that the trial court put unconstitutional restrictions on his ability to establish his defense.

Other significant issues are presented by the punishment phase of Williams' trial.  The state court, pursuant to Texas law, required the jury to determine Williams' sentence by answering three special-issue questions inquiring into his future societal

threat, the deliberateness of his actions, and whether he responded reasonably to any provocation.  Clerk's Record, at 210-211.  At the time of trial, Texas law did not include an explicit instruction for jurors to consider mitigating evidence.  The Supreme Court had previously upheld Texas' capital punishment statute under the assumption that the special issues would provide the jurors with a vehicle to consider mitigating circumstances.  *Jurek v. Texas*, 428 U.S. 262 (1976).

The prosecution's punishment-phase case relied on testimony and evidence of Williams' prior criminal activities.  Williams previously had been convicted of committing an armed robbery and carrying weapons.  There was evidence that the police suspected that Williams had committed burglary.  Eight people from Williams' home state of Minnesota testified that he had a bad reputation for peacefulness and abiding by the law.

Inexplicably, the defense did not call any witnesses or present any testimony in the punishment phase.  The defense relied on evidence from the guilt/innocence phase, the cross-examination of witnesses, and counsel's closing argument.  Not unexpectedly, the jury answered Texas' special issues in a manner requiring the imposition of a death sentence.

Among other issues, Williams' direct appeal complained that the prosecution unconstitutionally used its peremptory strikes to remove all African-Americans from

6

the jury venire.  The Texas Court of Criminal Appeals affirmed Williams' conviction and sentence.  *Williams v. State*, 682 S.W.2d 538 (Tex. Crim. App. 1984).

During Williams' appeal, the United States Supreme Court decided *Batson*.[2] After the Supreme Court granted his petition for certiorari review and remanded the case, *Williams v. Texas*, 479 U.S. 1074 (1987), the Texas Court of Criminal Appeals ordered the trial court to hold a *Batson* hearing, *Williams v. State*, 731 S.W.2d 563 (Tex. Crim. App. 1987).  In a 1988 *Batson* hearing, prosecutor Keno M. Henderson provided reasons to justify the State's exercise of peremptory challenges that resulted in a jury without any African-American jurors.  The trial-level court issued factual findings and the Texas Court of Criminal Appeals denied Williams' *Batson* claim. *Williams v. State*, 804 S.W.2d 95 (Tex. Crim. App. 1991).

On September 24, 1991, volunteer attorneys from Minnesota filed an application for a writ of habeas corpus ("1991 habeas application") on Williams' behalf raising thirty-nine grounds for relief.  State Habeas Record, at 6-155.  At some point, local criminal defense attorney Randy Schaffer began representing Williams. In 1993, Mr. Schaffer filed an Amended Application for Writ of Habeas Corpus ("1993 habeas application").  State Habeas Record, at 354-482.  The 1993 habeas application contained some of the issues first raised in the 1991 habeas application,

---

[2]      *Batson v. Kentucky*, 476 U.S. 79 (1986).

but eliminated or narrowed others.  On June 5, 2001, Mr. Schaffer sent the trial court a letter agreeing to abandon several additional claims he had asserted in the 1993 habeas application.  Specifically, Mr. Schaffer told the trial court "not to consider the grounds raised in the initial application filed by volunteer lawyers from Minnesota." Supplemental State Habeas Record, at 2.  Mr. Schaffer sent the letter the day after, and apparently without recognition of, the U.S. Supreme Court's opinion in *Penry II* which reversed the momentum of jurisprudence upholding Texas' former sentencing scheme.   Starting with *Penry II*, the Supreme Court has repeatedly held unconstitutional the capital sentencing statute under which Williams was sentenced to death.  After briefing and argument, the Court of Criminal Appeals denied habeas relief.  *Ex Parte Williams*, No. AP-76455, 2012 WL 2130951 (Tex. Crim. App. 2012).

Federal review followed.  This Court appointed counsel.  Williams filed a federal habeas petition that closely tracks the 1991 habeas application, reurging several claims that Mr. Schaffer abandoned.  Williams' amended federal petition raises numerous grounds for relief.  Respondent has moved for summary judgment [Doc. # 20].[3]

---

[3]      Respondent's summary judgment motion renumbers Williams' claims.  For the purposes of clarity, the Court will refer to the claims by the designation Williams laid out in his amended federal petition.

8

## II.   <u>ISSUES NEEDING DEVELOPMENT</u>

Respondent contends that  procedural law bars federal consideration of many claims. Respondent also argues that all Williams' claims lack merit.  The Court has reviewed the pleadings to date, the state court record, and the relevant law.  Given the significant legal developments in the last three decades, the Court has serious concerns about the integrity of Williams' capital conviction and death sentence.  The parties have filed extremely lengthy pleadings, but have still not properly joined the issues in this case.  Because the briefing as it now stands is inadequate on several grounds, the Court denies the pending summary judgment motion without prejudice.

The parties will adhere to the following briefing schedule.  Williams will initiate the new round of briefing by filing a memorandum of law that develops the issues raised by his federal petition.  This briefing will specifically discuss the following:

> 1.    Williams' petition mentions AEDPA standards, but does not apply them to each of his claims.  *See* Doc. #7, at 11-24.  As the Supreme Court recently observed in a similarly old case, "[a]ny retrial here would take place three decades after the crime, posing the most daunting difficulties for the prosecution.  That burden should not be imposed unless each ground supporting the state court decision is examined and found to be unreasonable under AEDPA."  *Wetzel v. Lambert*, ___ U.S. ___,  132 S. Ct. 1195, 1199 (2012).  Williams must address with citations to the record and applicable case law how the state court's resolution of each claim was contrary to, or an unreasonable application of, federal

9

law.  28 U.S.C. § 2254(d)(1).  Williams' claims must be addressed individually.  If Williams chooses to also argue cumulative error or unreasonableness because of the aggregation or errors, he may do so hereafter.

2.   The 1991 habeas application raised several of the claims in Williams' federal habeas petition.  Respondent argues that federal review is unavailable because Williams abandoned those issues later in the state habeas process.  Williams must demonstrate how federal habeas review and relief is available on those claims.

3.   Jury selection occurred well before the Supreme Court decided *Batson*.  Six years after trial, one prosecutor provided detailed reasons justifying each peremptory strike.  The *Batson* inquiry is not to examine *possible* reasons why a prosecutor *could have* stricken a potential juror, but asks for the *real* reasons for the strikes.  *See Miller-El II*, 545 U.S. at 252 (refusing to limit *Batson* to "a mere exercise in thinking up any rational basis"); *Johnson v. California*, 545 U.S. 162, 172 (2005) ("The *Batson* framework is designed to produce actual answers[.]").  Williams provides only cursory briefing relating to the *Batson* issue (claim IV), and importantly fails to identify how the state court's detailed review of that claim was an unreasonable application of federal law.  The Court expects, as suggested by the *Miller-El* cases, a side-by-side comparison of peremptorily struck jurors and those empaneled, a review of whether there was disparate questioning by prosecutors, and whether there is historical discrimination by the prosecutorial office or the individual prosecutors themselves.  *Reed v. Quarterman*, 555 F.3d 364, 372-75 (5th Cir. 2009) (reviewing *Miller-El*'s broader view of *Batson* jurisprudence).  Importantly, state habeas counsel's argument emphasized *Rosales v. Dretke*, H-03-CV-1016, Doc. # 109 (S.D. Tex. Dec. 12, 2008), a case which found a *Batson* violation was found and involved the same attorney who prosecuted Williams.  Respondent has extensively analyzed the jury selection in this case, but neither party has described the effect, if any, of the *Rosales* decision.  Williams must explain whether he intends to rest on the pleadings or

10

develop this claim.

4.     Williams argues that Texas' special issues provided an inadequate vehicle for jurors to consider evidence of his remorse, his young age at the time of the offense, his attempts at furthering his education, his early introduction to crime, and the circumstances of the offense (claims VII, VIII). State habeas counsel, however, waived judicial consideration of all but the final factor. The state habeas courts adjudicated only a narrow *Penry* claim, providing Respondent with his argument that a procedural bar precludes review over the remainder of the issues. Williams must address whether federal review is available for the broad array of issues initially asserted and now typically considered in *Penry* claims. *See Martinez v. Ryan*, ___ U.S. ___ 132 S. Ct. 1309, 1318 (2012); *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013). In addition, Williams must compare the evidence presented to his jury with evidence the federal courts have found exceeds the bounds of Texas' former special issues.

5.     Williams strenuously complains about limitations the trial court placed on the defense, such as barring evidence that specifically addressed the primary issue at the guilt phase – whether he knew that the person he was fighting with and killed was a police officer. Williams claims that the State did not disclose exculpatory information and that the trial court impeded the presentation of important evidence (claims I, II). Respondent, however, counters that Williams relies only on state law to prove error. Williams must discuss whether these evidentiary limitations on the defense impaired a right under the federal constitution to present a defense. In particular, Williams must discuss the aggregate effect of any evidentiary rulings in light of the sole issue in dispute, his knowledge of the victim's status as a police officer.

6.     Williams claims that the prosecution intimidated witnesses. Williams, however, does not identify record support for each allegation of intimidation. Williams must describe more fully

what pressures the prosecution put on witnesses.  Williams must also provide record citations to support his allegations, such as that police officers detained his sister Linda Ransome unreasonably.  *See* Doc. # 7, at 73.

7.   The Supreme Court has found *Penry* error in several cases since 2001.  *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 259 (2007); *Brewer v. Quarterman*, 550 U.S. 286, 296 (2007); *Tennard v. Dretke*, 542 U.S. 274, 287 (2004); *Penry II*, 492 U.S. at 320.  Since the Supreme Court last addressed the *Penry* jurisprudence in 2007, the Fifth Circuit has granted relief in every case raising a *Penry* claim except one.  *See McGowen v. Thaler*, 675 F.3d 482, 494 (5th Cir. 2012) (citing *Smith v. Quarterman*, 515 F.3d 392, 414 (5th Cir. 2008)).  Much of Respondent's motion, however, relies on cases decided before *Penry II*.  *See* Doc. # 20 at 148-157.  In addition, Respondent argues that "[a]ssuming jury-instruction error, it was harmless."  Doc. # 20 at 155.  The Fifth Circuit has repeatedly rejected Respondent's assertion of harmless error in *Penry* cases.  *Jones v. Stephens*, 541 F. App'x 399, 408 (5th Cir. 2013); *McGowen*, 675 F.3d at 496; *Rivers v. Thaler*, 389 F. App'x 360, 362 (5th Cir. 2010); *Nelson v. Quarterman*, 472 F.3d 287, 314 (5th Cir. 2006) (en banc).  Respondent must provide a justification for this invitation to contravene circuit authority.  The parties will focus their briefing on the law as it now stands.

In addition, the parties may address any other issues needing development. Once Williams has filed a memorandum of law, Respondent will file a renewed answer.  Williams will then file a reply.  The Court anticipates that renewed briefing will address the identified issues and cite new law that has developed since Williams filed his state and federal habeas actions.

## III.   CONCLUSION

For the reasons discussed above, the parties must address serious procedural and substantive questions before adjudication can proceed.  It is therefore

**ORDERED** that Respondent's Motion for Summary Judgment [Doc. # 20] is **DENIED WITHOUT PREJUDICE**.  It is further

**ORDERED** that Williams will file a memorandum of law on or before **September 14, 2015**.  Respondent will file an answer on or before **October 15, 2015**. Williams will file a reply on or before **November 16, 2015**.  Unless provided leave of the Court, the parties will limit their pleadings to fifty (50) pages, times new roman font and twelve-point type.

**SIGNED** at Houston, Texas on August 11, 2015.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

13