# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-70019

United States Court of Appeals
Fifth Circuit

**FILED**
January 5, 2017

Lyle W. Cayce
Clerk

ARTHUR WILLIAMS,

United States District Court
Southern District of Texas
FILED

JAN 0 5 2017

David J. Bradley, Clerk of Court

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-1714

Before CLEMENT, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Arthur Williams was convicted and sentenced to death for the capital murder of a police officer. Williams unsuccessfully appealed through the Texas judicial system and then turned to federal court for habeas relief. The federal district court granted a conditional writ of habeas corpus as to Williams's sentence under *Penry v. Lynaugh*, 492 U.S. 302 (1989), and declined to certify

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70019

any issue pertaining to Williams's guilt or innocence for appeal. Williams now applies for a Certificate of Appealability ("COA") to appeal on a single issue, namely, whether the prosecutor at Williams's trial used peremptory strikes in an unconstitutional, racially-motivated manner as described in *Batson v. Kentucky*, 476 U.S. 79 (1986) and *Miller-El v. Dretke*, 545 U.S. 231 (2005). Williams's application is DENIED.

I

In 1982, Williams was on parole and living in a halfway house in Minnesota. He left the halfway house in violation of his parole and moved to Houston, Texas to live with his sister. Minnesota authorities issued a warrant for his arrest, which was forwarded to the Houston Police Department. Detective Daryl Shirley, who was assigned to Williams's case, went to the sister's apartment complex in plain clothes and, seeing Williams, sought to arrest him. A struggle ensued, and Williams shot Detective Shirley twice, killing him. Williams was tried in 1983, found guilty of capital murder, and sentenced to death.

Williams appealed his conviction and sentence to the Texas Court of Criminal Appeals ("TCCA") on a number of grounds. *See Williams v. State*, 682 S.W.2d 538 (Tex. Crim. App. 1984) ("*Williams I*"). After a long and complicated series of legal proceedings, one issue remains for us to address on this appeal: whether a COA should issue to allow Williams to appeal his conviction on the ground that the prosecution used peremptory strikes in an unconstitutional, racially discriminatory manner.

Detective Shirley was white; Williams is black. At Williams's trial, the prosecution used peremptory strikes against six prospective black jurors. The jury that eventually convicted Williams had no black members. At each stage of his multiple state and federal proceedings, Williams has argued that the

No. 16-70019

prosecutor's use of the strikes violated his constitutional rights.[1] The procedural history of this case was made more complex by the Supreme Court's twice altering its doctrine pertaining to racially discriminatory peremptory strikes, first in *Batson* in 1986, and then again in *Miller-El* in 2005. The district court described how the Supreme Court's evolving jurisprudence impacted Williams's case in detail; it is not necessary to recount here. *See Williams v. Davis*, No. H-13-1714, 2016 WL 3523876, at *12–16 (S.D. Tex. June 28, 2016) ("*Williams III*").

Over the course of multiple hearings on the matter, the prosecutor, Keno Henderson, put forth three main race-neutral explanations for the six strikes: (1) certain prospective jurors made statements and answered questions in a way that indicated discomfort with capital punishment; (2) some prospective jurors did not fully understand the questions they were asked; and (3) career and personal circumstances could have impeded certain prospective jurors' ability to focus fully on the trial. After an evidentiary hearing and extensive record analysis, the state trial court credited Henderson's testimony and recommended that relief be denied. The TCCA adopted the trial court's recommendation and denied habeas relief. *Ex parte Williams*, No. WR-71404-02, 2012 WL 4449432, at *1 (Tex. Crim. App. Sept. 26, 2012) ("*Williams II*").

Williams next turned to federal court. Williams made two distinct arguments in federal district court as to why Henderson's conduct violated his constitutional rights under *Batson*. First, Williams argued that Henderson's

---

[1] On this appeal, Williams claims that the peremptory strikes violated his Sixth, Eighth, and Fourteenth Amendment rights. Williams offers no argument or case law to support the Eighth Amendment claim. This court has previously rejected attempts to "dress . . . equal-protection and sixth-amendment claims in the garb of the eighth amendment" in the peremptory strike context. *Prejean v. Smith*, 889 F.2d 1391, 1397 (5th Cir. 1989). We therefore decline to address Williams's unsupported allegation that the strikes violated his Eighth Amendment rights.

3

No. 16-70019

race-neutral explanations were not viable "because not all black jurors expressed an inability to consider a death sentence and, contrary to his testimony, did not express difficulty understanding his questions." *Williams III*, 2016 WL 3523876, at *17. Second, Williams made the general allegation "that all black jurors were excluded pursuant to the practice and policy of the Harris County District Attorney[s] in general and was the regular practice of the prosecutor in this case." *Id.* (internal quotation marks omitted). The district court disposed of Williams's first argument easily, because Williams never identified which specific stricken jurors' answers and behavior did not comport with the explanations Henderson had given as to each. Williams thus failed to "particulariz[e] his allegations or giv[e] specific examples." *Id.*

The district court found Williams's second argument—that Henderson specifically, and the Harris County District Attorney's Office more generally, engaged in a pattern and practice of striking black jurors—more difficult, particularly in light of a fellow district court's decision in *Rosales v. Quarterman*, No. H-03-1016, 2008 U.S. Dist. LEXIS 125130 (S.D. Tex. Dec. 12, 2008). In *Rosales*, another defendant who had been prosecuted by the Harris County District Attorney's office sought habeas relief on *Batson* grounds. Henderson was not the lead prosecutor on the case, but he was involved. The district court in *Rosales* ultimately discredited the prosecutors' post-facto justifications for peremptory strikes against prospective minority jurors, and concluded that "the State of Texas violated the *Equal Protection Clause* in selecting jurors for [Rosales's] trial." *Id.* at *75. As some evidence to support its granting of habeas relief, the district court in *Rosales* pointed to Henderson's prosecution of Williams, noting that, "[w]hile the state courts found no error in [Williams's] case, the testimony given therein proved that few minorities served on Harris County juries." *Id.* at *32.

4

No. 16-70019

Ultimately, while the district court in Williams's case did recognize "a suspicious pattern in Williams' trial" and acknowledged that "Williams has consistently made allegations about long-standing racism in the Harris County District Attorneys' Office," it nonetheless concluded that "Williams has simply not substantiated his claim that this office pattern was the reason for the strikes in issue." *Williams III*, 2016 WL 3523876, at *18. That lack of substantiation, combined with the deference it was required to give the TCCA's finding of facts and legal conclusions, led the district court to determine that it was "constrained to conclude that Williams has not made a persuasive showing of inferences suggesting purposeful discrimination in the use of peremptory strikes as to specific jurors or that the prosecutor actually engaged in discriminatory practices in his case." *Id.* at *19. The district court therefore denied habeas relief on Williams's *Batson* claim, and declined to issue a COA.

II

When a defendant petitions federal court for a writ of habeas corpus in a capital case, the standard of review is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, when habeas relief is denied by a district court, appeal to the circuit is not as of right—the petitioner must first apply for and obtain a COA. *See* 28 U.S.C. § 2253(c)(1). A COA will not be granted unless "the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Where, as here, the federal district court has denied habeas relief, the determination whether to grant a COA requires "the court of appeals [to] limit its examination to a threshold inquiry into the underlying merit of [petitioner's] claims." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 481 (2000)). A COA will only be granted if the petitioner "demonstrate[s] that jurists of reason could disagree with the district court's resolution of his constitutional claims." *Id.*

5

No. 16-70019

AEDPA instructs that a state court's findings of fact and determination as to a claim's merits are to be granted substantial deference in federal habeas proceedings. When a petitioner's claims were adjudicated on the merits in state court, a federal writ of habeas corpus "shall not be granted . . . unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)–(2). A state court's decision will only constitute an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." *Young v. Dretke*, 356 F.3d 616, 623 (5th Cir. 2004) (internal quotation marks omitted). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Purposeful racial discrimination in jury selection "violates a defendant's right to equal protection" under the Fourteenth Amendment. *Batson*, 476 U.S. at 86. Where, as here, a defendant seeks habeas relief on the ground that prosecutors violated his constitutional rights by using peremptory strikes against prospective jurors in a racially discriminatory manner, *Batson*'s three-step burden-shifting analysis applies.

> First, the claimant must make a *prima facie* showing that the peremptory challenges have been exercised on the basis of race. Second, if this requisite showing has been made, the burden shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Finally, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination.

6

6 of 12

No. 16-70019

*United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000). A determination by the district court that the petitioner did make a *prima facie* showing in satisfaction of the first step will not be reviewed on appeal. *See United States v. Webster*, 162 F.3d 308, 349 (5th Cir. 1998) (holding that once a district court has reached the second step of the *Batson* analysis, "we no longer examine whether a *prima facie* case exists"). At the second step, "[u]nless a discriminatory intent is inherent in the [prosecutor's] explanation, the reason offered should be deemed race-neutral." *Id*. The proffered explanation need not be "persuasive, or even plausible. . . . [T]he issue is the facial validity of the prosecutor's explanation." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (internal quotation marks omitted). Throughout, "[t]he party making the claim of purposeful discrimination bears the ultimate burden of persuasion." *Montgomery*, 210 F.3d at 453. Finally, "[w]here, as in this case, the trial judge has entertained and ruled on a defendant's motion charging a *Batson* violation, we review only [the district court's] finding of discrimination *vel non*. . . . In this regard, we apply a clearly erroneous . . . standard of review." *United States v. Terrazas-Carrasco*, 861 F.2d 93, 94 (5th Cir. 1988) (internal citations and quotation marks omitted); *see also Montgomery*, 210 F.3d at 453 ("[W]e review the district court's judgment for clear error.").

Williams thus faces a double hurdle: he must show that the TCCA's factual determinations were mistaken with clear and convincing evidence, and he must also show that the district court's unwillingness to reach that conclusion was itself clear error.

III

Before reaching the substance of Williams's application, we must address a threshold issue. Respondent maintains that Williams has waived his *Batson* claim due to inadequate briefing. Her argument on this point is twofold. First, she contends that Williams's brief fails to satisfy the requirements laid

7

No. 16-70019

out in Rule 28 of the Federal Rules of Appellate Procedure. Second, she maintains that, because Williams has failed to supply any evidence or argument making a "side-by-side comparison" between minority jurors who were struck and white jurors who were not, and because such evidence is "more important to the issue of purposeful discrimination" than any other evidence, Williams has effectively waived his *Batson* claim. *Puckett v. Epps*, 641 F.3d 657, 664 (5th Cir. 2011).

Respondent's second contention is easily dismissed. A key component of Williams's argument to the district court was precisely that submission of side-by-side comparative evidence is not a necessary condition for finding a *Batson* violation. *See Williams III*, 2016 WL 3523876, at *18 (noting Williams's argument that "a comparison to other jurors is unnecessary in light of the record"). He appears to raise the same argument on appeal. Williams's choice not to provide side-by-side evidence and to instead pursue a different tack in arguing his *Batson* claim cannot lead to the conclusion that he has waived that same claim.

Respondent's first argument on the waiver issue is stronger. "We have often stated that a party must 'press' its claims. At the very least, this means clearly identifying a theory as a proposed basis for deciding the case—merely intimating an argument is not the same as 'pressing' it." *Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014) (quoting *United States v. Scroggins*, 559 F.3d 433, 446–47 (5th Cir. 2010)). An argument on appeal is waived unless it is argued in the body of the brief and is supported "with citation to the authorities, statutes and parts of the record relied on." *Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990); *see also* Fed. R. App. P. 28(a)(8)(A).

While not a model of clarity, Williams's brief does make out an argument, supported by citations to case law. In particular, Williams's contention—to be addressed below—that the pattern of discrimination identified by the district

8

No. 16-70019

court in *Rosales* calls into question Henderson's proffered race-neutral explanations and should have tipped the scale at the third step of the *Batson* analysis, is made with some coherence. Citations to the record on appeal and record below are present, albeit in an improper format. We therefore decline to find that Williams waived his *Batson* claim due to inadequate briefing.

IV

We turn now to the substance of Williams's application for a COA. As noted above, Williams's precise arguments are difficult to decipher, but upon careful reading, he seems to make two. First, he contends that the district court clearly erred at the second step of the *Batson* analysis. Second, he argues that, even if the district court was correct in reaching *Batson* step three, the pattern of discrimination acknowledged in *Rosales* and Henderson's actions at Williams's trial were enough to make a persuasive showing of purposeful discrimination. We address each argument in turn.

A. *Batson* Step Two

Williams argues that Henderson's race-neutral explanations for the peremptory strikes did not pass even the low bar set up at *Batson* step two, because the proffered explanations did not align with the questions asked at voir dire. This argument fails here for the same reasons it did below. Williams generally asserts that "the voir dire of the black jurors do not support a conclusion that Keno Henderson [] exercised the[] peremptory strikes for race neutral reasons," and then notes that "three black jurors were excluded because they could not understand [Henderson's] questions." But nowhere does Williams explain which exact stricken jurors he is referring to, nor does he identify specific questions and/or answers at voir dire that call Henderson's race neutral explanations into question. Williams's argument on this point must therefore be denied.

9

B. *Batson* Step Three

Williams's central argument seems to be that the district court erred at the third step of the *Batson* analysis. Specifically, Williams maintains that, when considered in combination, the pattern of racially discriminatory peremptory strikes in Harris County identified by the district court in *Rosales*, Henderson's use of six peremptory strikes against black prospective jurors, the fact that no black jurors served on Williams's jury, and the long period of time between Williams's trial and the hearing at which Henderson initially offered race-neutral explanations for the strikes constitute sufficient evidence for Williams to carry his burden at *Batson* step three. The district court acknowledged "concerns about whether the prosecutors struck jurors on account of their race." *Williams III*, 2016 WL 3523876, at *19. Nevertheless, the district court deferred to the multiple state courts' respective determinations after remanding twice for evidentiary reassessments, first to apply *Batson* and then to apply *Miller-El*, that Henderson's race-neutral reasons for striking each black juror were credible.

The district court was correct to defer. AEDPA sets a high bar for defendants seeking to overturn state court fact-determinations through federal habeas relief. Williams has not cleared that bar. He has made no substantive argument attacking Henderson's race-neutral explanations, except to make general allegations supported by little or no record evidence that they were concocted after the fact. We agree with the district court that Williams's arguments are simply "too conclusory to warrant relief on *Batson* grounds." *Williams III*, 2016 WL 3523876, at *18. Given the paucity of Williams's substantive analysis and the statutorily-mandated deference we owe the respective state courts' determinations made after multiple evidentiary hearings and extensive probing of the record, Williams's argument must be rejected.

No. 16-70019

V

Williams's application for a COA is DENIED.



Certified as a true copy and issued
as the mandate on Jan 05, 2017

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

## United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

January 05, 2017

Mr. David J. Bradley
Southern District of Texas, Houston
United States District Court
515 Rusk Street
Room 5300
Houston, TX 77002

    No. 16-70019    Arthur Williams v. Lorie Davis, Director
                          USDC No. 4:13-CV-1714

Dear Mr. Bradley,

Enclosed is a certified copy of an opinion-order entered on January 5, 2017. We have closed the case in this court.

We will forward the state court papers at a later date.

                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By: _____
                              Joseph M. Armato, Deputy Clerk

Enclosure(s)

cc:
    Mr. Matthew Dennis Ottoway
    Mr. Stanley G. Schneider